IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JORGE DANIEL RIVEROS, | * |
| Plaintiff | * |
| v. | * Civil No.: **PJM 15-193** |
| WWK CONSTRUCTION, INC., ET AL., | * |
| Defendants | * |

## MEMORANDUM OPINION

Jorge Daniel Riveros has sued WWK Construction, Inc. and Wilgeshino B. G. Pinto Rojas (collectively, "Defendants"), alleging violations of the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207. Riveros and Defendants have now reached a settlement, and ask for the Court to approve the settlement and dismiss with prejudice all claims in the Complaint. For the reasons that follow, the Court **GRANTS** the Joint Motion for Settlement, ECF No. 13, and **DISMISSES WITH PREJUDICE** all counts of the Complaint, ECF No. 1, as to both Defendants.

I.

Factual and Procedural Background

WWK Construction, Inc., is a Maryland corporation engaged in the business of home construction and remodeling. Wilgeshino B.G. Pinto Rojas owns WWK Construction, Inc. Riveros worked for Defendants as a handyman and construction laborer.

1

Riveros claims that he worked for Defendants from July 1, 2011 to August 4, 2014 as an employee and that Defendants paid him at a rate of $14.00 per hour. He further alleges that he worked on average 63 hours per week, and that he was not paid at the overtime rate of one and a half times his wage for those hours worked over 40 hours. Riveros claims that Defendants' failure to pay him overtime wages as required by law was willful, and he pleads that he is owed approximately $23,773.00 in overtime damages.

Defendants, on the other hand, contend that Riveros was not an employee, but rather an independent contractor. Defendants admit that Riveros was paid for his professional services but contend that he was paid based on an agreed-to project fee. Defendants also dispute the number of hours worked by Riveros.

Riveros filed a Complaint on January 23, 2015, asserting violations of the FLSA, MWHL, and MWPCL. ECF No. 1. Shortly after the Court's initial Scheduling Order, ECF No. 8, the Parties began a dialogue to discuss the claims presented, exchange discovery, consider the defenses, evaluate the merits of the dispute, and explore the possibility of settlement. Settlement negotiations eventually followed. On September 21, 2015, the parties submitted the pending Joint Motion for Settlement. ECF No. 13.

## II.

### Standard of Review

Congress enacted the FLSA to protect workers from the poor wages and long hours that may result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Court-approved settlement is an exception to that rule, "provided that the

settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In reviewing FLSA settlements for approval, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Saman*, 2013 WL 2949047, at *3 (citing *Hoffman v. First Student, Inc.*, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect[] a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* The Court considers (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)).

### III.

#### Bona Fide Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17.

The parties stipulate that, after exchange of limited discovery, there exist several *bona fide* disputes between the parties. First, the parties dispute whether Riveros was an independent contractor or employee based on the parties' course of dealing and respective conduct. Relatedly,

3

the parties dispute whether Riveros' actions, duties, and responsibilities establish his exempt status under the applicable federal and state laws. Riveros maintains his assertion that he was an hourly employee (or misclassified independent contractor) who was denied his due wages, including overtime pay. Defendants, however, argue that records disclosed during discovery question the strength and credibility of Riveros' assertions.

Second, the parties dispute whether Wilgeshino B.G. Pinto Rojas, the owner of WWK Construction, Inc., could be held personally liable under federal and state law. Riveros alleges that Pinto Rojas exercised sufficient control over the day to day operations of WWK Construction, with the power to hire Riveros and set his pay scale, such that he could be individually liable for any FLSA violations. Defendants dispute that Pinto Rojas exercised such control.

Third, the parties dispute whether Riveros worked the amount of hours claimed and had been paid all due wages under federal law. Riveros alleges that he worked on average over 63 hours per week for a period of over three years, and Defendants deny that Riveros worked for the period and number of hours alleged.

Fourth, the parties dispute whether Defendants' actions were taken in good faith, and, relatedly, whether Riveros would be entitled to liquidated and treble damages. Riveros argues that Defendants willfully violated the applicable federal and state law. Defendants contend that their employment and recordkeeping practices were adopted and implemented in good faith.

Accordingly, the Court finds that several *bona fide* disputes exists as to Defendants' liability under the FLSA, whose resolution would depend on both further factual development and rulings of law.

## IV.

### Fairness and Reasonableness

If a *bona fide* dispute is found to exist, courts must then evaluate the fairness and reasonableness of the settlement based on the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

Having reviewed the parties' submissions and after considering the relevant factors enumerated by the *Lomascolo* court, the Court concludes that the Settlement Agreement is a fair and reasonable compromise of the parties' *bona fide* disputes.

The case is settling at a relatively early stage; indeed, the parties represent that only limited discovery has taken place. In *Saman*, which settled at a similarly early stage, plaintiff's counsel averred that he had the opportunity through mediation to review wage/hour records of sufficient quantity and quality to determine the potential range of recovery in the case. *See Saman*, 2013 WL 2949047, at *3. On this basis, Judge Chasanow of this Court concluded that the parties had sufficient opportunity to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations. *See id.* (citing *Lomascolo*, 2009 WL 3094955, at *11).

Counsel in the present case represent that the parties began a dialogue shortly after the Court's Scheduling Order, entered April 8, 2015, to exchange discovery and evaluate the merits of each party's position. The parties then engaged in settlement negotiations which spanned four months. The parties stipulate that negotiations included routine emails, document production

5

regarding the nature and extent of the parties' respective claims and defenses, as well as thorough conference calls. The Court is therefore satisfied that the parties have had sufficient opportunity to evaluate their claims and defenses as to these disputed legal and factual issues and to engage in informed arms-length settlement negotiations.

Similarly, the Court finds no fraud or collusion in the proposed settlement, given the experience of Riveros' counsel, the endorsement of settlement by counsel for both parties, and the quality of the filings submitted to date.

Finally, as to the probability of Riveros' success on the merits and the amount of the settlement in relation to the potential recovery, the Court is satisfied that the settlement of his FLSA claim is fair and reasonable under the circumstances. Under the proposed settlement, Defendants will pay a total of $13,503.11 to Riveros, payable as follows: (i) $10,000.00 to Riveros; and (ii) $3,503.11 to Riveros' attorney, $3,000 of which accounts for attorneys' fees and $503.11 reimburses costs. These awards will be subject to applicable taxes and deductions.

Riveros alleges that he is owed at $23,773.00 in unpaid overtime wages. Taking into account that, of the $13,503.11 proposed settlement, $10,000 is going to Riveros directly, Riveros is receiving approximately 42% of his claim. The Court notes that the amount to be paid to Riveros in the settlement agreement is significantly less than the value of the claims that Riveros would be owed if, at trial, Defendants were to be found to have willfully violated the FLSA. But because it is disputed whether Riveros would be able to recover at all, let alone whether he would be able to recover liquidated damages, the parties have essentially agreed to split the difference by settling their claim for a significant portion of the wages Riveros alleges he is owed. Especially in light of the admitted lack of contemporaneous written documentation that would support Riveros' contentions (i) that he was an hourly wage-earning employee, and

(ii) that he worked, on average, 63 hours per week, the Court finds this settlement reasonable under the circumstances.

The opposing parties also agree to a general waiver of claims against each other. While some courts have held that an overly broad release provision can render an FLSA agreement unreasonable if the release includes claims unrelated to those asserted in the complaint, *Saman*, 2013 WL 2949047, at *5 (citing cases), if the employee is compensated reasonably for the release executed, the settlement can be accepted, and the Court is not required to evaluate the reasonableness of the settlement as to the non-FLSA claims. *See Duprey v. Scotts Co. LLC*, 2014 WL 2174751, at *4 (D. Md. May 23, 2014). Here, as previously discussed, despite the weaknesses of his case, Riveros will be compensated for a significant portion of his claimed wages. Accordingly, the Court finds that the settlement reasonably compensates Riveros for the release executed.

## V.

### Attorneys' Fees

The reasonableness of the fee award proposed in an FLSA settlement must be independently assessed, regardless of whether there is any suggestion that a "conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Lane*, 2011 WL 3880427, at *3 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1243 (M.D. Fla. 2010)). In making that assessment, courts typically use the principles of the traditional lodestar method as a guide. *Id.* (citing cases).

Traditionally, in calculating an award of attorneys' fees, the Court must determine the lodestar amount, defined as a reasonable hourly rate multiplied by hours reasonably expended. *Duprey v. Scotts Co. LLC*, 2014 WL 2174751, at *6 (D. Md. May 23, 2014) (citing *Lopez v.*

*XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012)). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 890 n. 11 (1984)). In Appendix B to its Local Rules, this Court has established rates that are presumptively reasonable for lodestar calculations. *Id.* (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000)). Plaintiffs should also provide all documentation necessary for the Court to make a lodestar determination as to the hours reasonably expended, including but not limited to declarations establishing the hours expended by counsel, broken down for each task. *See Saman*, 2013 WL 2949047, at *7; Local Rule 109.2; Appendix B to the Local Rules.

Riveros' counsel, Mary Craine Lombardo, Esq., has been practicing law since 1999. She is admitted to practice in state and federal courts in Maryland, the District of Columbia, Virginia, Pennsylvania, and New Jersey (inactive). Lombardo's colleague, Jonathan F. Lieberman, Esq., who handled the initial intake of the matter, was also admitted to the bar in 1999 and is admitted in state and federal courts in Maryland, the District of Columbia, and Virginia. Lombardo and Lieberman worked with a junior associate, Eduardo Garcia, an attorney with one year of experience who drafted the Complaint and performed certain research. Moreover, certain tasks in this case were delegated to paralegals and appropriate support staff.

Per Appendix B, lawyers admitted to the bar for fifteen to nineteen years may reasonably bill $275-425 per hour, and those admitted to the bar for less than five (5) years may reasonably bill $150-225. Paralegals and law clerks may reasonably bill $95-150 per hour.

Counsel for Riveros filed sufficient documentation of the fees and costs incurred in the form of a detailed billing statement. This statement indicates that counsel billed 33.5 hours total

on this matter, and also specifies the hours billed by each professional. At their reasonable hourly rates, Ms. Lombardo incurred $4,246.50 in fees for 10.2 hours of work (averaging about $416 per hour), Mr. Lieberman incurred $2,598.00 in fees (averaging about $406 per hour), and Mr. Garcia incurred $3,265.00 in fees (averaging about $270 per hour). Support staff (including a paralegal) billed $728.00 (averaging about $149 per hour). Counsel for Riveros also incurred $503.11 in costs. The total in attorneys' fees and costs thus amounts to $11,340.61. However, Riveros' counsel, in the interest of reaching a settlement, agreed to reduce the attorneys' fee award by $7,837.50 to $3,503.11.

The Court, in its discretion, is satisfied that the settlement allocation of $3,503.11 for attorneys' fees and costs – which accounts for over 33 hours expended by Riveros' counsel and support staff – is reasonable, especially in light of the speedy resolution of the case, and the fact that Riveros obtained what appears to be a substantial recovery. Accordingly, the Court finds the attorney fee award in the proposed settlement to be reasonable.

## VI.

### Conclusion

For the foregoing reasons, the Court **GRANTS** the Joint Motion for Settlement and **DISMISSES WITH PREJUDICE** Counts I, II, and III of the Complaint. A separate Order will ISSUE.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

October 5, 2015